60 Wn.2d 127 (1962)
372 P.2d 530
In the Matter of the Estate of JOHN CRASWELL BEARD, Deceased.
OCOMA FOODS COMPANY et al., Respondents,
v.
LEE L. NEWMAN et al., as Executor and Executrix, Appellants.[*]
No. 35719.
The Supreme Court of Washington, En Banc.
June 14, 1962.
*128 Newman & Newman, by Russell W. Newman and Franco & Bensussen, by Albert M. Franco, for appellants.
Elliott, Lee, Carney & Thomas (Elvin P. Carney, of counsel), Comfort, Dolack & Hansler, Cameron Sherwood, and William M. Tugman (Robert A. Comfort, of counsel), for respondents.
DONWORTH, J.
This is an appeal from an order removing appellants as the executor and executrix of the estate of John Craswell Beard.
On August 19, 1958, John Craswell Beard died testate leaving community property consisting of a family home subject to a mortgage, an automobile, a $6,540 bank account, other personal property worth $500, and a sole proprietorship business known as "Beard's Frosted Foods." Under the will, the decedent's surviving spouse, Vernitta Phyllis Beard, was the sole beneficiary. The testator nominated his wife and Lee L. Newman, his attorney (who will hereafter be designated as the executors when referred to together), to administer the estate and empowered them to:
"... take possession of and assume control of all my property and estate, of whatsoever kind or nature, and wheresoever situate, and proceed to pass upon, allow or reject any claim and/or claims presented against my said estate, to collect all monies due my said estate and to institute all suits or proceedings necessary therefor, and in any manner that they may deem fit or proper; to sell either real or personal property, regardless of whether such sale is necessary to pay the expenses of administration or claims against my said estate, to administer upon, settle and distribute my said estate without the intervention of any court or courts whatsoever further than to admit this my Last Will and Testament to probate, direct notice to be given to creditors, ascertain who are heirs, enter a decree of solvency or take such other preliminary steps as may be necessary under the laws of the State of Washington to admit to probate my said estate, after which the same shall be administered upon and settled by my said executors, without the intervention or supervision of any court *129 or tribunal whatsoever, and no bond shall be required of my said executors, either to enable them to qualify as such under this, my last Will and Testament, or to sell real or personal property."
The will was admitted to probate, the executors were appointed and qualified, and an inventory and appraisal were filed. Thereafter, the executrix operated the frozen food business as she had done with her husband prior to his death. Neither an adjudication by the court that the estate was solvent nor an order permitting the continuance of the business was obtained. After the notice to creditors was published, creditors of the business were paid for claims arising prior to the death of the testator, although, adhering to a prior arrangement made with the executors, they had not filed and presented their claims. After paying these claims in the amount of $53,741.38, the executrix filed and presented a claim against the estate for reimbursement of this amount more than six months after the publication of notice to creditors. It was asserted, and the petitioners did not deny, that the purpose for filing this claim was to gain a tax exemption, and the claim was withdrawn subsequently. Thereafter, petitions for an award in lieu of homestead and for a family allowance were filed and granted.
During the operation of the frozen food business after the death of the testator, debts were incurred in the ordinary course of business, some of which had not been paid at the time the order of removal was entered. Of these obligations, some were owed to the petitioners herein. Regarding the success of the operation of the business during this period, suffice it to say that the business experienced some losses. In the early spring of 1959, Arden Farms Company, a competitor, resumed some advances made prior to the testator's death concerning acquisition of the business. The negotiations continued, and, on December 7, 1959, a contract was entered into for the sale of Beard's Frosted Foods between Vernitta Phyllis Beard and T.B. Amundson of Arden Farms Company, although no order of the court authorizing the *130 sale was obtained. In the contract, the buyer promised to pay $13,539 for the trucks and equipment, together with the value of the inventory on hand and the accounts receivable which could be collected. The buyer agreed to apply these payments to the claims of the business creditors arising prior to the sale and after the death of the testator and pay the excess, if any, to the seller. In case of a deficit, the buyer promised to attempt to arrange a compromise agreement with the creditors whereby they would discharge the seller in full. However, upon learning of the agitation which underlies this action, Arden Farms refused to make these payments and expressed a desire that it be allowed to pay the proceeds into court or some other body which could make the proper payments after the issues in this action are resolved. As a result, the executors brought an action for damages against Arden Farms Company for breach of the contract, which was pending at the time of the hearing of this action on appeal.
On February 18, 1960, Ocoma Foods Company and Seattle Ice and Cold Storage Company petitioned the superior court for removal of Vernitta Phyllis Beard and Lee L. Newman as executors of the estate of John Craswell Beard. An initial proceeding occurred March 3, 1960, in which the executors were directed to render a report on the condition of the estate and their activities regarding the administration of it. American National Processors, Inc., and Umatilla Canning Company were allowed to intervene upon filing a petition seeking the removal of the executors. A final hearing on the issues commenced on March 24, 1960, wherein the sole issue became whether or not the executors had mismanaged the administration of the estate. An order removing Vernitta Beard and Lee L. Newman as executors and appointing an administrator with the will annexed was entered on the basis of information derived from the petitions of the original petitioners and the intervenors, the response to the petitions, the report, affidavits and accountings of the executors, and arguments of counsel. The grounds for the removal, stated in the order, were:
*131 "... said Executor and Executrix have continued the business of the deceased known as Beard's Frosted Foods, it constituting one of the assets of subject estate, without order of Court or a decree of solvency, and in spite of the fact that said business was insolvent at the date of the death of John Craswell Beard, to the extent that it was unable to pay its creditors in the ordinary course of business, and it further appearing that said Executor and Executrix operated said business at a loss and the estate is now insolvent, and it appearing that an attempted sale of the business to Arden Farms has not been completed by reason of litigation and claims developing in connection with said sale and the administration of the estate, and that the Executrix Vernitta Phyllis Beard caused a claim on her behalf in the sum of $53,741.38 to be filed and approved more than six months after the date of the first notice to creditors, and did also secure an order setting aside a portion of the real property in lieu of homestead and also providing for a widow's allowance retroactive to the date of death, both of which orders were secured without advising the Court of the insolvency of said estate, and that the acts of said Executor and Executrix are adverse to the best interests of creditors, who have come into existence as a result of the operation of said business, and said Executor and Executrix having failed to faithfully perform their duties and trust, as required by law ..."
From this order, the executors appeal.
Appellants, raising the question of jurisdiction, contend that respondents were not proper parties to bring this proceeding, and, therefore, the trial court erred in entering the order of removal on the basis of respondents' petition. The standing of these parties is not material to the trial court's jurisdiction to remove the executors from the estate.
[1] Under Art. 4, § 6, of our constitution, and RCW chapter 11.02, the superior courts have broad powers in administering estates brought within their jurisdiction. In re Kelley, 193 Wash. 109, 74 P. (2d) 904 (1938); In re Campbell's Estate, 46 Wn. (2d) 292, 280 P. (2d) 686 (1955). One of these powers, the power to remove executors or administrators, has been specifically set forth by the legislature. RCW 11.28.160 provides:
"The court appointing any executor or administrator *132 shall have authority for any cause deemed sufficient, to cancel and annul such letters and appoint other executors or administrators in the place of those removed."
RCW 11.28.250 provides:
"Whenever the court has reason to believe that any executor or administrator has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such executor or administrator, or for any other cause or reason which to the court appears necessary, it shall have power and authority, after citation and hearing to revoke such letters...."
It is clear from these constitutional and statutory provisions that a superior court which has jurisdiction over an estate may remove an executor for any proper cause, after citation and a hearing, notwithstanding the source of the information justifying the removal. The court's power to remove executors for proper cause is not contingent upon a petition being filed by parties interested in the estate. A contrary holding would place an undue limitation on the exercise of the court's duty in the administration of estates brought within its jurisdiction. (See 2 Bancroft's Probate Practice (2d ed., 1950) §§ 300, 301. Therefore, respondents need not have been parties interested in the estate in order for the court to have had the power to remove appellants from the administration of the estate upon valid grounds disclosed by respondents.
[2] Appellants contend that the grounds upon which the court based its order of removal were invalid. In considering this contention, we are governed by the rule that, although a superior court has a very wide discretion as to the grounds upon which it may remove an executor or administrator, with which this court should not ordinarily interfere, the grounds must be valid and supported by the record. State ex rel. Carlson v. Superior Court, 47 Wn. (2d) 429, 287 P. (2d) 1012 (1955).
*133 One of the grounds for removal to which appellants assign error was as follows:
"... said Executor and Executrix ... [have] failed to faithfully perform their duties and trust, as required by law...."
It appears, from the affidavit of one of the executors, that:
"... at the time of the death of the above named deceased, the physical assets of the deceased and the estate were far less than the amount of the creditors statements due creditors of the deceased. That the surviving spouse of the deceased as Executrix, decided to operate the said business so that all of said then existing creditors could be paid, and further so that it might be possible for the said surviving spouse to rescue something out of the said estate for the heir, the surviving spouse...."
Notwithstanding their knowledge that the estate was then insolvent, the executors proceeded without any legal authority to administer the affairs of the estate in the same manner as though they had obtained a decree of solvency. Since no decree of solvency had ever been entered, the executors had no authority to act as though they were proceeding under a nonintervention will. They had no authority to operate the business and incur any indebtedness other than necessary to preserve the assets and wind up the estate according to the applicable statutes, unless they obtained permission from the court. This permission was not obtained.
Appellants strenuously contend that an order of solvency was not a prerequisite to the operation of the business by them after the testator's death under the nonintervention provisions in the will, and, therefore, the operation of the business without such an order did not constitute an irregularity on their part as executors. This contention is based upon the theory that obtaining an order of solvency is optional under RCW 11.68.010 in order to avoid intervention of the court. The statute provides:
"In all cases where it is provided in the last will and testament of the deceased that the estate shall be settled *134 in a manner provided in such last will and testament, and that such estate shall be settled without the intervention of any court or courts, and where it duly appears to the court, by the inventory filed, and other proof, that the estate is fully solvent, which fact may be established by an order of the court on the filing of the inventory, it shall not be necessary to take out letters testamentary or of administration, except to admit the will to probate and to file a true inventory of all of the property of such estate and give notice to creditors and to the body having charge of the collection of inheritance tax, in the manner required by law...." (Italics ours.)
[3, 4] Appellants argue that the italicized phrase, "which fact may be established by an order of the court," makes the entry of the order of solvency permissive rather than mandatory. We disagree. The statute must be read in its entirety. The language preceding the phrase clearly states it must appear to the court that the estate is fully solvent. This requires a court determination, which, in a court of record, must be entered in writing. Interpreting this language as mandatory rather than permissive is consonant with the rule of statutory construction that particular portions of a statute should be construed so as to give effect to and be in harmony with the remaining language in the statute. Maryland Cas. Co. v. Seattle Elec. Co., 75 Wash. 430, 134 Pac. 1097 (1913); State ex rel. Department of Public Ser. v. Northern Pac. R. Co., 200 Wash. 663, 94 P. (2d) 502 (1939). It is clear, therefore, that an order of solvency must be entered in order that an estate may be administered without court intervention under RCW 11.68.010.
[5] Since one of the grounds upon which the trial court based its order of removal was valid, all other grounds to which error has been assigned may be treated as surplusage. This court has many times held that where the trial court's order is correct, it will not be reversed because the court gave a wrong or insufficient reason for its rendition. In re Bodvin's Estate, 37 Wn. (2d) 872, 226 P. (2d) 878 (1951); Kitsap Cy. Credit Bureau v. Richards, 52 Wn. (2d) 381, 325 P. (2d) 292 (1958). The same rule should be applied *135 where the trial court gives additional reasons for its order besides a ground which is adequate to support it.
[6] The remaining assignments of error all relate to findings of fact which are supported by substantial evidence in the record. We will not disturb them. Thorndike v. Hesperian Orchards, Inc., 54 Wn. (2d) 570, 343 P. (2d) 183 (1959).
The decision of the trial court is affirmed.
FINLEY, C.J., WEAVER, ROSELLINI, OTT, and FOSTER, JJ., concur.
HUNTER, J. (dissenting)
I dissent. I agree that the failure of the executors in this case to obtain an order of solvency before proceeding with the administration of the estate without court intervention constituted a valid ground for their removal. However, removing executors from estates is peculiarly in the wide discretion of the trial court. State ex rel. Carlson v. Superior Court, 47 Wn. (2d) 429, 287 P. (2d) 1012 (1955); In re Wolfe's Estate, 186 Wash. 216, 57 P. (2d) 1066 (1936).
In the instant case, the trial court did not remove the executors on this ground alone. This was only one ground considered with several others. I am satisfied other grounds considered by the trial court were not valid grounds to support the removal of these executors. Had the trial court known that these grounds were not valid, we can only speculate in concluding it would have felt compelled to remove the executors. This is particularly significant, under the facts of this case, where the sole heir was one executor and her coexecutor was her attorney designated by her deceased husband, and where the completion of the estate's administration was under the court's control.
A ground for removal to which the appellants assign error was as follows:
"... the acts of said Executor and Executrix are adverse to the best interests of creditors, who have come into existence as a result of the operation of said business, and said Executor and Executrix [have] failed to faithfully perform their duties and trust, as required by law...."
*136 The appellants having failed to secure an order of solvency which was essential for them to administer the estate without court intervention left the appellants without authority to operate the business and incur any indebtedness other than necessary to preserve the assets and wind up the estate according to the applicable statutes, unless they obtained permission from the court. This permission was not obtained; therefore, any obligations incurred by the appellants in operating the business would not bind the estate. Larson v. Duclos, 46 Wn. (2d) 334, 281 P. (2d) 458 (1955).
The ground that the acts of the executors are adverse to the best interest of the creditors assumes a fact which has not been determined by the trial court, viz., that those denominated as creditors are in fact creditors of the estate. Therefore, an actual determination must first be made by the trial court as to whether these persons furnishing credit to the executors in the operation of the business are creditors of the estate, before the order of removal can be based on this ground.
One of the grounds for removal to which appellants assign error was as follows:
"... the Executrix Vernitta Phyllis Beard caused a claim on her behalf in the sum of $53,741.38 to be filed and approved more than six months after the date of the first notice to creditors ..."
The record discloses that this was a claim for reimbursement of funds used to pay creditors' claims existing against the estate at the time of the testator's death. The record further shows the claim was withdrawn; consequently, no damage resulted to the estate for which the executors could be charged. Under these circumstances, the trial court erred in holding that obtaining approval of this claim, filed more than six months after date of first notice to creditors, was a ground upon which to base the order of removal.
Another ground in the trial court's order of removal to which the appellants assign error was as follows:
*137 "... the Executrix ... did also secure an order setting aside a portion of the real property in lieu of homestead and also providing for a widow's allowance retroactive to the date of death, both of which orders were secured without advising the Court of the insolvency of said estate...."
My examination of the record discloses no irregularity on the face of the petition for the award in lieu of homestead and the order entered. There is nothing in the record indicating what transpired at the hearing on this petition. This was not a proceeding to vacate the order; therefore, it was error for the court to conclude that the order for an award in lieu of homestead was improperly obtained. Neither was there anything in the record indicating any irregularity on the face of the petition for a widow's allowance and the order entered, nor is there any record of the proceedings at the hearing on this petition. Again this was not a proceeding to vacate the order. The trial court erred in holding that the family allowance was improperly obtained.
This court should consider the question of validity of the above grounds which I believe is correctly determined by the above analyses. The trial court should be permitted to exercise its discretion as to the removal of these executors in the light of this determination.
The order removing the executors should be reversed and the case remanded for further hearing and determination not inconsistent with the views herein expressed.
The parties should bear their own costs of this appeal.
NOTES
[*] Reported in 372 P. (2d) 530.